UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Tripoint, LLC, | ) | CASE NO. 1:14 CV 360 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Rhein Chemie Corp., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant Rhein Chemie Corporation's Motion to

Dismiss Counts I, III, and IV of Plaintiff's Complaint (Doc. 9).  Also pending is Plaintiff's

Motion to Strike, Or in the Alternative, for Leave to File Sur-Reply on Behalf of Plaintiff,

Tripoint, Regarding Defendant's Reply (Doc. 14).  This action arises as a result of the sale and

purchase of certain chemicals.  For the reasons that follow, the motion to dismiss is GRANTED.

The Court further GRANTS plaintiff's motion to strike.

**FACTS**

For purposes of ruling on the pending motion, the facts asserted in the complaint are

1

presumed true.

Plaintiff, Tripoint, LLC d/b/a Presti Industries, brings this lawsuit against defendant, Rhein Chemie Corp.  Plaintiff is in the business of manufacturing and supplying products, including tire envelopes,  to tire and rubber product manufacturers.  The quality and usefulness of a tire envelope depends on strength, resistance to heat, durability, flexibility and longevity of the tire envelope.  Plaintiff devised a formula for mixing the compound from which highly heat resistant, durable, long lasting and effective tire envelopes are molded.  Plaintiff contracts the mixing of the formula for the compound to third party mixers who, after mixing the formula, ship the compound to plaintiff.  Plaintiff  then molds the compound into finished tire envelopes. The molded tire envelopes are then shipped to its customers.

The formula is made from various chemicals purchased from manufacturers like defendant.  Defendant  specializes in making and selling specialty chemicals for the rubber industry.  Defendant was fully aware that two of the chemicals plaintiff uses in the formula to make the compound for molding the tire envelopes are Poly-Dispersion WBC-41 ("WBC-41") and Rhenogran MBTS-75 ("MBTS-75"), both of which are manufactured and/or supplied by defendant.  The chemicals MBTS-75 and WBC-41 are different from each other, even though both are shipped by defendant as whitish granules in 55 lb. boxes. With respect to shipping and receiving, what distinguishes MBTS-75 from WBC-41 is the specific chemical identification label on the box and the Certificate of Analysis sent by defendant.

On or about January 24, 2012, plaintiff sent purchase order number 355 to defendant for twenty 55 lb. boxes of WBC-41. Eighteen boxes were to be shipped to plaintiff, who would then ship the WBC-41 to outside mixers to make compound, and 2 boxes were to be shipped

directly to Chardon Custom Polymers, one of plaintiff's outside mixing companies.  On or about

January 31, 2012, defendant accepted plaintiff's purchase order by sending two order

confirmations, one for shipment of two boxes of WBC-41 to Chardon Custom Polymers and the

other for confirmation of the shipment of eighteen boxes of WBC-41 to plaintiff.   Defendant

also sent a "Certificate of Analysis" pertaining to Purchase Order number 355, indicating that the

WBC-41 passed the analysis and testing within the specified upper and lower limits.  Both order

confirmations contained identical boilerplate "Conditions of Sale" printed in small print on the

reverse side.

　　　Each 55 lb. box actually shipped under the parties' contract contained a label specifying

"POLY-DISPERSION WBC-41P (55#)."  In February, 2012, Chardon Custom Polymers and/or

other outside mixers used the chemical from these boxes supplied by defendant to make the

compound, which plaintiff would later mold into tire envelopes.  Shortly after receiving the

finished compound from its mixers, plaintiff used the compound in its molds to manufacture tire

envelopes.  The tire envelopes made from this compound were then shipped to plaintiff's

customers.

　　　On or about February 21, 2012, plaintiff became concerned that an unknown

quantity of WBC-41 contained a chemical other than WBC-41.  At about this time and

thereafter, customers who received tire envelopes molded from the compound began to complain

that the tire envelopes lacked durability, had subpar heat aging and/or failed prematurely in the

field during normal use.  Subsequent testing of the contents of a 55 lb. box of Rhein Chemie

WBC-41 demonstrated that the box contained no WBC-41 whatsoever, but instead contained

MBTS-75.

3

Defendant mislabeled and misrepresented its boxes and Certificate of Analysis for the

boxes labeled "POLY-DISPERSION WBC-41P (55#)" sent by defendant to plaintiff.  Plaintiff's

mixers therefore did not contain WBC-41, but contained some other chemical, such as

MBTS-75.  The mislabeled compound caused the tire envelopes molded from that compound to

be defective, inferior and unusable by plaintiff's customers.   Plaintiff's customers rejected

and/or returned tire envelopes made from the compound mixed from the chemical taken from the

mislabeled boxes.  As a result, plaintiff lost sales.

Thereafter, plaintiff filed this lawsuit, which contains four claims for relief.  Count one

alleges negligent misrepresentation.  Count two is a claim for "breach of contract/warranty."

Count three is a claim for "negligence/Ohio Product Liability Act," and count four is a claim for

fraud.  Defendant moves to dismiss counts one, three, and four and plaintiff opposes the motion.

**STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in

favor of the plaintiff.  *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999).

Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's

claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.  However, the complaint

must set forth "more than the bare assertion of legal conclusions."  *Allard v. Weitzman* (*In Re

DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993).  Legal conclusions and unwarranted

factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule

12(b)(6) review. *Fingers v. Jackson-Madison County General Hospital District,* 101 F.3d 702

(6th Cir. Nov. 21, 1996),  *unpublished*.  Dismissal is proper if the complaint lacks an allegation

4

regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

In addition, a claimant must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Id*. at 1949 (citations and quotations omitted). *See also, Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir.2009).

### **ANALYSIS**

Defendant argues that counts one, three, and four must be dismissed because they are tort causes of action based on a breach of contract.  According to defendant, any duty defendant owes to plaintiff arises as a result of the parties' contract.  As such, absent an "additional" duty, the tort claims fail to state a claim for relief.  In response, plaintiff argues that Ohio law has long recognized that a party to a contract is also liable for breaching a "positive legal duty imposed by law."  According to plaintiff, defendant was under a duty "not to deceive another through the careless supply of false information."  As such, the tort claims cannot be dismissed.

It is well-settled in Ohio that "it is no tort to breach a contract, regardless of motive."

5

*Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976).  *See also Textron Financial Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270-71 (Ohio App. 9th Dist. 1996) ("the motive of a breaching party to a contract is irrelevant to the contract action"); *Salvation Army v. Blue Cross and Blue Shield of Northern Ohio*, 636 N.E.2d 399, 403 (Ohio App. 8th Dist. 1993) ("It is not a tort to breach a contract, no matter how willful or malicious the breach); *Teknol v. Buechel*, 1999 WL 33117391 (S.D. Ohio Aug. 9, 1999) (same).

Thus, where the gravamen of the complaint is an action for breach of contract, appending tortious language such as "willful, intentional or malicious" will not transform the breach of contract action into one sounding in tort.  *Salvation Army*, 636 N.E.2d  at 403.  "A tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed."  *Battista*, 538 F.2d at 117.  Moreover, "in addition to containing an independent duty of that created by contract, an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract."  *Textron*, 684 N.E.2d at 1271 (emphasis in original).

Here, in support of its negligent misrepresentation, negligence, and fraud claims, plaintiff alleges that defendant sent plaintiff "incorrectly and falsely" labeled boxes indicating that they contained WBC-41, when in fact they did not.  Plaintiff further alleges that defendant failed to use reasonable care in labeling the boxes.  According to the complaint, defendant used recycled boxes and failed to remove the old labels in an effort to save cost.  Similarly, with regard to its breach of contract claim, plaintiff alleges that defendant breached the contract by "shipping the *[m]islabeled* [b]oxes" to plaintiff.  The Court finds that the allegations supporting the tort claims

6

are covered by the express terms of the contract.[1]  In other words, the gist of all of plaintiff's

claims stem from the fact that plaintiff delivered the wrong chemical to plaintiff in an improperly

labeled box.  (*See*, Compl. ¶ 33, in support of  negligent misrepresentation claim: "[Defendant

sent plaintiff...boxes that were incorrectly and falsely labeled as containing [one chemical], when

in fact those boxes did not contain [that chemical].")  These very same allegations support the

breach of contract claim.  (*See*, Compl. ¶ 39,  "By shipping the Mislabeled Boxes to [plaintiff]...

in response to [plaintiff's] purchase order...defendant breached its contract and warranty

obligations").  Because no special duty exists between the parties, plaintiff cannot create a tort

claim out of conduct that would amount to a breach of contract.  *Battista*, 538 F.2d at 118 (no

special duty arises in an  "ordinary contract between businessmen").  *See also, Toledo Mack*

*Sales & Service, Inc. V. Mack Trucks, Inc.*, 437 Fed.Appx. 381, 385 (6th Cir. 2011)(commercial

party cannot argue separate duty where the transaction occurred because it was required by

contract). *Compare, Bowman v. Goldsmith Bros.*, 109 N.E.2d 556, 558 (Oh. Ct. App.

1952)(landlord owed duty of care to keep common areas safe even in face of implied contract).

---

[1]     Notably, plaintiff's negligent misrepresentation and fraud claims
point to wrongdoing in connection with the *performance* – not the
formation – of the contract. *In Ferro Corp. V. Blaw Knox Food &*
*Chemical Equipment Co*, 700 N.E.2d 94 (1997) the court allowed
plaintiff, who was in privity with defendant, to assert claims for
negligent misrepresentation and fraud.  The misrepresentations and
allegedly fraudulent statements were made, however, prior to the
formation of the contract.  Here, no such allegations exist. *See*
*also, National Mulch and Seed, Inc. V. Rexius Forest By-Products,*
*Inc.*, 2007 WL 894833 (S.D. Ohio March 22, 2007)(finding that no
"special duty" is required, but misrepresentations were made
during contract *formation*); *McCarthy, Lebit, Crystal & Haima Co.*
*V. First Union Management, Inc.*, 622 N.E.2d 1093 (8th Dist. Ct.
App. 1993)(alleged misrepresentations occurred during contract
formation).

To hold otherwise would transform a failure to perform under the terms of a contract into a tort claim, which is precluded by *Battista*.

Defendant also argues that plaintiff's negligence claim is barred by the economic loss doctrine.  Plaintiff argues that because damage to the tire envelope occurred, the economic loss doctrine is inapplicable.

Upon review, the Court agrees with defendant.  In *Floor Craft v. Parma Community General Hospital Ass'n.*, 560 N.E.2d 206 (Ohio 1990), the Ohio Supreme Court held that "for actions sounding in negligence, 'the well established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'"  *Floor Craft*, at 208 (*citing Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 630 (Ohio 1989).  "In order to recover indirect economic damages in a negligence action, the plaintiff must prove that the indirect economic damages arose from tangible physical injury to persons or from tangible property damage."  *Queen City Terminals, Inc. v. General American Transportation Co.*, 653 N.E.2d 661, syllabus ¶ 1 (Ohio 1995).  Absent physical injury to person or property, indirect economic damages may only be recovered in contract.  *Id*. at 667.

In *Chemtrol*, a dispute arose from the sale of a defective "arch dryer."  Although the arch dryer was subsequently repaired, the initial defect caused plaintiff to incur substantial economic losses.  Plaintiff filed a claim with its insurance carriers to recover for the losses, and the insurance companies brought a third-party complaint against the manufacturer of the arch-dryer alleging negligence, strict liability, breach of express and implied warranties, and breach of contract.  In upholding the trial court's dismissal of the tort claims against the manufacturer, the

8

court held,

> In negligence, the law imposes upon the manufacturer of a product the duty of reasonable care.  That duty protects the consumer from physical injury, whether to person or property.  However, the law of negligence does not extend the manufacturer's duty so far as to protect the consumer's economic expectations, for such protection would arise not under the law but rather solely by agreement between the parties. 'When the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfil the term of the bargain arises only from the contract.'

*Chemtrol*, 537 N.E.2d at 630-31.

In essence, the court limited recovery to the terms of the contract because there was no allegation that damage to persons or property occurred.  Although plaintiff failed to provide adequate notice under the contract, rendering recovery under a breach of contract theory unavailable, the court noted that "the existence of a contract *remedy* is irrelevant to the determination of whether contract or tort law provides the appropriate set of rules for recovery of damages."  *Id*. at n.8 (quotations omitted) (emphasis added).

Here, plaintiff argues that property damage occurred to the tire envelopes as a result of the defective and mislabeled chemical supplied by defendant.  The Court rejects this argument. In the Sixth Circuit, damage to a final product occurring as a result of a defective component part does not amount to damage to "other property" for purposes of the economic loss doctrine.  *See, e.g.,  HDM Flugservice GMBH v. Parker Hannafin Corp.,* 332 F.3d 1025, 1028 (6th Cir.2003); *Gentek Building Prods, Inc. V. Sherwin-Williams Co.*, 2005 WL 6778678 (N.D. Ohio. Fed. 22, 2005)*(*"The Sixth Circuit has indicated that there is no damage to "other property" if the defective product is one of several component materials that comprise a final, integrated product, and the harm alleged is to the final, integrated product.").  *See also, East River Steamship Corp.*

9

*V. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986)(in admiralty case, refusing to allow purchaser to recover for damage to integrated product caused by defective component part); *King v. Hilton-Davis*, 855 F.2d 1047 (3rd Cir. 1988)(farmer prohibited by economic loss doctrine from suing for corp failure suffered as a result of defective growth suppressant).

Plaintiff argues that in this case damage to separate property occurred because plaintiff is the purchaser of a component part. Unlike purchases of an end product that attempt to sue manufacturers of component parts, plaintiff itself used the component part to manufacturer the end product. In so doing, damage occurred to "other property," *i.e.*, the tire envelopes. The Court rejects this argument. As an initial matter, plaintiff cites no law in support of its position. In essence, plaintiff asks that the Court carve out an exception to the economic loss doctrine for purchasers of component parts. The Court sees no logical reason why purchasers of component parts, who combine the defective component part with other parts to form an integrated end product, differ from purchasers of end products.

> If the Ohio courts were to hold that a component is 'other' property from the integrated product, it would allow purchasers to circumvent the economic loss rule in almost every case. Preventing a commercial buyer from recovering the damage to the product from the component manufacturer in tort comports with the policy behind prohibiting a purchaser from recovering in tort for the product itself.

*HDM Flugservice GMBH v. Parker Hannafin Corp.,* 332 F.3d at 1030-32. Here, the parties to the contract necessarily understood that defendant would use the chemical as a component part. And, the complaint alleges that they agreed to certain terms governing the sale and purchase of the component part. The fact that the defective component resulted in damage to end products by virtue of its existence in such products does not amount to damage to person or "other property" for purposes of the economic loss doctrine. Accordingly, the Court finds that

plaintiff's claim for negligence also fails because it is barred by the economic loss doctrine.

Having addressed the arguments asserted by defendant in its motion to dismiss, the Court will not reach the additional arguments raised by defendant for the first time in its reply brief. Accordingly, the motion to strike those arguments is well-taken.

**CONCLUSION**

For the foregoing reasons, Defendant Rhein Chemie Corporation's Motion to Dismiss Counts I, III, and IV of Plaintiff's Complaint (Doc. 9) is GRANTED.  The Court further GRANTS plaintiff's motion to strike.

IT IS SO ORDERED.


 /s/Patricia A. Gaughan
PATRICIA A. GAUGHAN
Date:   7/31/14                                    United States District Judge